UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LINDA DILEO,

          Plaintiff,

   -against-

DENIS RICHARD MCDONOUGH,
Secretary of the U.S. Department of
Veteran Affairs,

          Defendant.

**MEMORANDUM AND ORDER**

Case No. 19-CV-2405 (FB) (MMH)

*Appearances:*
*For the Plaintiff*:
JIMMY M SANTOS
Jimmy M Santos PLLC
28 Wilson Place
Cornwall, NY 12518

*For the Defendants*:
BREON PEACE
PAULINA STAMATELOS
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Plaintiff Linda DiLeo brought a federal employment discrimination and retaliation action against Defendant Denis Richard McDonough ("Defendant"), the Secretary of the U.S. Department of Veteran Affairs ("VA"), who moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is GRANTED.

1

# I.   BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation.  The facts are undisputed unless otherwise noted.  The Court construes all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in that party's favor.  *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

Plaintiff is a former Supervisory Health Science Specialist at the Brooklyn campus of the VA New York Harbor Healthcare System, where she supervised a department in the VA's laboratory services (the "Brooklyn Blood Bank").  She began working at the VA in 1982 and became Supervisor of the Blood Bank in 1986.

In 2014, Plaintiff filed a case against the VA under the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII") for gender-based discrimination, claiming that the VA paid her less than a male counterpart. While Plaintiff and the VA ultimately settled the case in April 2016, it serves as Plaintiff's first instance of protected activity under Title VII for this litigation.

In this litigation, Plaintiff alleges that the VA discriminated against her because of her gender and retaliated against her for engaging in Title VII protected activity between June 2018 and December 31, 2020.

2

In June 2018, at two meetings regarding a planned reorganization of the Brooklyn VA campus, Plaintiff raised concerns that the plan would understaff her facility and imperil patient care.  In the aftermath of those meetings, Plaintiff claims that VA management de facto "demoted" her by, *inter alia*, removing decision-making power from her, requiring her to do weekend work, stripping her of supervisory duties, and scrutinizing her work.  Plaintiff alleges that her manager, Kimberly Byrd, primarily engaged in these discriminatory and retaliatory actions.

Plaintiff first complained about discrimination and retaliation through VA's informal Equal Employment Opportunity ("EEO") process on July 9, 2018, and filed a formal EEO complaint with the VA on October 22, 2018.  After 180 days lapsed since Plaintiff filed her formal EEO complaint and the VA had failed to render any final agency action, Plaintiff withdrew her EEO Complaint and commenced this action in April 2019, alleging violations of the EPA and retaliation and gender discrimination under Title VII.

After Byrd informed Plaintiff on November 6, 2020, that Byrd needed to audit Plaintiff's timesheet and potentially discipline her if she found evidence of overtime abuse, Plaintiff felt "forced" to resign effective December 31, 2020. Plaintiff characterizes her resignation as a constructive discharge.

Following her resignation from the VA, Plaintiff filed her amended complaint in March 2021.  Plaintiff has since withdrawn her pay-discrimination claim under the EPA with prejudice.

## II.    DISCUSSION

### A. *Title VII Gender Discrimination*

The familiar, three-part *McDonnell Douglas* burden-shifting framework governs Plaintiff's Title VII gender-discrimination claim.  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under this framework: (1) Plaintiff must establish a prima facie case of discrimination; (2) Defendant must produce an explanation to rebut the prima facie case by showing that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason"; and (3) Plaintiff must show pretext by demonstrating that intentional discrimination, not the employer's proffered explanation, was the true reason for the adverse employment action.  *Id.* at 128-29.

Plaintiff must state a prima facie case of gender discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  The fourth element

4

of this test may be satisfied "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

The Court finds that Plaintiff fails to establish discriminatory animus based on her gender, or alternatively, that she fails to carry her burden at step three of *McDonnell Douglas*. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 n.1 (2d Cir. 2002) (noting that the fourth criteria for a prima facie case and the third step of *McDonnell Douglas* "tend to collapse as a practical matter under the *McDonnell Douglas* framework"). Plaintiff's sole evidence of gender discrimination is her allegation that Byrd treated her proffered male comparator, Manhattan Blood Bank supervisor Nathan Venka, better than she treated Plaintiff.[1] Byrd supervised both Venka and Plaintiff.

"A showing of disparate treatment — that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside [her] protected group' — is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Employees are "similarly

---

[1] Plaintiff originally alleged that Venka earned a higher salary than Plaintiff, which she construed as evidence of gender discrimination, but she appears to have dropped this argument when it became apparent that she outearned Venka for most of the relevant period. Def's 56.1 Stmnt. at ¶¶ 63-72.

situated to co-employees if they were (1) subject to the same performance
evaluation and discipline standards and (2) engaged in comparable conduct,"
meaning that the comparator must be "similarly situated to the plaintiff in *all
material respects*." *Ruiz*, 609 F.3d at 494 (internal citations and quotations
omitted) (emphasis added).  Plaintiff fails to establish comparator evidence for two
reasons.

First, Plaintiff and Venka were not similarly situated in "all material
respects."  The record reveals that to the extent Byrd "scrutinized" Plaintiff's
scheduling and job responsibilities, it was because of Plaintiff's individual issues
with the Blood Bank reorganization and scheduling.  Plaintiff admitted that she
struggled with the reorganization plan and scheduling and got into "arguments"
with Byrd about the reorganization plan's staffing, while she proffers no evidence
that Venka did.  In fact, Byrd threatened to audit Plaintiff only because timecards
showed that Plaintiff was scheduled to be on duty.  Pl. Aff. ¶ 21, Ex. CC.  Thus,
Plaintiff's comparator argument fails because she does not show that Venka also
struggled with the reorganization and scheduling, which caused Plaintiff's friction
with Byrd.  *See, e.g.*, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d
Cir. 1997) (plaintiff did not prove she was similarly situated to coworkers where
"plaintiff presented no evidence that the alleged conduct of the comparators was
similar to her conduct"); *McKinney v. Dep't of Transportation*, 168 F. Supp. 3d

416, 425 (D. Conn. 2016) (plaintiff's deposition "based solely on her subjective belief that these other employees were similarly situated to her and received less severe discipline . . . is insufficient to create a genuine issue of material fact.").

Second, even assuming Plaintiff and Venka were similarly situated, Plaintiff's admission that Venka "was temporarily reassigned by Byrd and investigated regarding his performance as the supervisor of the Manhattan Blood Bank" in 2020 undermines her claim that Venka received more favorable treatment from Byrd.[2]  Venka's *actual* reassignment and investigation were worse than the *potential* discipline that Plaintiff faced and resulted in her ultimate resignation. Def. 56.1 Stmt., ¶ 59; Pl. Aff. ¶ 21, Ex. CC.  Where comparators outside a protected group face similar, let alone worse, treatment from a common supervisor, the comparator argument fails.  *See Shumway*, 118 F.3d at 64 (discrimination claim fails because "[e]ach case was handled exactly as Shumway's was, and in each case, the supervisor either resigned or was terminated"); *Williams v. Alterra Assisted Living Home Health Corp./Brookdale*, No. 07-CV-0492, 2010 WL

---

[2] This series of events led Venka to file an EEO Complaint against Byrd for race and age discrimination, which settled at the administrative level.  Venka was eventually reinstated to his position.  Although it is not impossible that Byrd separately discriminated against Venka based on gender and Byrd based on race and age, that Byrd closely scrutinized both Plaintiff and her male comparator undermines Plaintiff's comparator argument.  While in other cases that shortcoming may not be fatal to the plaintiff's case, Plaintiff here adduces no other evidence of gender discrimination.

5072587, at *6 (W.D.N.Y. Dec. 10, 2010) (no material issue of fact where plaintiff failed to "show that these similarly situated employees were treated more favorably").

The Court does not doubt that Plaintiff perceived her work environment as emotionally taxing, but Plaintiff proffers no evidence that VA management treated her worse than similarly situated employees because of her gender. As the Court cannot rely on Plaintiff's conclusory allegations about gender discrimination, Defendant's motion for summary judgment is granted as to this claim.

### B. Title VII Retaliation

The Court also grants Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim. Title VII retaliation claims, like discrimination claims, follow the *McDonnell Douglas* burden-shifting framework. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). To state a prima facie case, Plaintiff must show "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). Once the employer proffers a legitimate non-retaliatory reason for the adverse employment action, Plaintiff must show that the "non-retaliatory

reason is a mere pretext for retaliation," which requires her to show that retaliation was a "but-for" cause of the adverse action. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013).

Plaintiff's theory is that VA management retaliated against Plaintiff beginning in June 2018 because of Plaintiff's Title VII protected activity during 2014-16, when Plaintiff filed her first lawsuit for gender-based pay discrimination. Assuming *arguendo* that Plaintiff was subject to a materially adverse employment action, the Court finds that Plaintiff's claim fails at the fourth element of the prima facie case, i.e., showing a causal connection between Plaintiff's protected activity and the adverse employment action, or alternatively, at step three of *McDonnell Douglas*.

Plaintiff's temporal-proximity argument fails because too much time passed between Plaintiff's protected activity and any adverse employment action. True, "[c]lose temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor*, 609 F.3d at 552. Indeed, temporal proximity is often the best evidence that a retaliation plaintiff has. But they key word is "*close*."

While there is no hard-and-fast rule as to the requisite temporal proximity, the general ballpark is a few *months*, not *years*. *See Kugler v. Donahoe*, No. 11-

CV-648 RRM, 2014 WL 1010317, at *9 (E.D.N.Y. Mar. 17, 2014) (collecting cases). Here, Plaintiff's protected activity — engaging in Title VII litigation — last occurred *more than two years* before the allegedly retaliatory acts.[3] The two-year period is simply too long to infer retaliatory animus. *See, e.g.*, *Chang v. Safe Horizons*, 254 Fed. App'x 838, 839 (2d Cir. 2007) (plaintiff's termination almost one year after her complaint of discrimination undermined any nexus based upon temporal proximity); *Chukwueze v. NYCERS*, 891 F.Supp.2d 443, 457 (S.D.N.Y. 2012) (no causal connection where three to six months lapsed between protected activity and adverse employment action); *De La Cruz v. City of N.Y.*, 783 F.Supp.2d 622, 647 (S.D.N.Y. 2011) (finding no causal connection where six months lapsed).

Plaintiff also argues that temporal-proximity evidence exists because she complained internally to the VA that she had been subjected to EEO reprisal on July 9, 2018, and the alleged retaliation continued thereafter. However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*,

---

[3] Of course, Plaintiff's June 2018 complaints about the reorganization plan's effects on patient safety do not constitute protected activity under Title VII because they did not oppose an unlawful employment practice under Title VII, e.g., gender or race employment discrimination. *See* 42 U.S.C. § 2000e-3.

248 F.3d 87, 95 (2d Cir. 2001).  Thus, because Plaintiff admits that the adverse job

actions began in June 2018, before her July 2018 complaint, temporal proximity

alone cannot supply an inference of causal connection.  *See Perez v. City of New*

*York*, 843 F. App'x 406, 408 (2d Cir. 2021) (adverse actions before protected

activity sever causal connection).

Finally, Plaintiff's comparator argument also fails.  Plaintiff claims that

while a coworker, Yolanda Velez, also voiced patient-care concerns at the June

2018 reorganization meetings, VA management retaliated against Plaintiff, but not

Velez, because Velez did not file an earlier lawsuit against the VA.  While

retaliation plaintiffs, like discrimination plaintiffs, can rely on comparator

evidence, there must be an "objectively identifiable basis for comparability,"

*Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), such as "holding the

same positions of roughly the same rank, and being subject to the same

performance review and disciplinary standards."  *See Hernandez v. City of New*

*York*, No. 11-CV-3521 SJ RER, 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013).

However, Velez's and Plaintiff's situations were not "sufficiently similar" because

Plaintiff served as Velez's supervisor.  *Senno v. Elmsford Union Free Sch. Dist.*,

812 F. Supp. 2d 454, 475 (S.D.N.Y. 2011); ECF 69-7, Ex. E (the Affidavit of

Yolanda Velez) (Plaintiff served as Velez's "immediate supervisor").

Because Plaintiff cannot rely on temporal proximity between her protected activity and adverse employment actions and she provides no other evidence of retaliation, Defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted, and Plaintiff's case is dismissed with prejudice.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 12, 2024